**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CALEB L MCGILLVARY,** | Civil Action No. 15-8840 (MCA) |
| Plaintiff, | |
| v. | OPINION |
| **UNION COUNTY, NEW JERSEY et al.,** | |
| Defendants. | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter has been opened to the Court by Plaintiff Caleb McGillvary's Complaint asserting violations of his civil rights in connection with the investigation and prosecution of Plaintiff for the murder of Joseph Galfy, Jr. in May 2013. Presently before the Court are four separate motions to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) brought by the Clark Police Department, Clark Police Chief Pedro Matos ("the City Defendants") (ECF No. 59), Joseph Cryan, Edward Suter, Union County New Jersey, and Union County Sheriff's Office ("the County Defendants") (ECF No. 61), Andrew M. DellaQuila, Robert B. Henderson, Johnny Ho, John J. Hoffman, Grace H. Park, Scott M. Peterson, Union County Prosecutor's Office, Jose Vendas, William V. Roeder, and J Michael Walker ("the State Defendants") (ECF No. 62), and Robert J. Pandina (ECF No. 60)[1] For the reasons explained in this Memorandum Opinion, the Court will grant the motions to dismiss as to all Moving Defendants.

---

[1] Plaintiff also names in the caption the Philadelphia Police Department and Philadelphia Police Commissioner Charles H. Ramsey, and identifies several additional Philadelphia police officers in the Complaint. It is not clear if any of these Defendants were served and none have entered an appearance in this action.

I. **FACTUAL BACKGROUND**

    a. **The Allegations in the Complaint**

In the Complaint Plaintiff generally asserts that the City, County, and State Defendants were involved in the investigation of Joseph Galfy's ("Galfy") death and were aware that Plaintiff claimed that he had been sexually assaulted and drugged by Galfy. *See* Complaint at ¶¶ 1-3. According to the Complaint, Plaintiff was arrested in Philadelphia, Pennsylvania on May 16, 2013, by members of the Philadelphia Police Department and members of the Union County Prosecutor's Office were promptly notified. *Id.* at ¶¶ 4-5.

Assistant Union County Prosecutor Peterson, who reports to Prosecutor Park, along with Union County Prosecutor' Office ("UCPO") Detectives DellaQuila, Henderson, Ho, and Vendas responded in-person to the Philadelphia Police Department. Detectives Vendas and Ho interviewed Plaintiff at the Philadelphia Police Department, and Plaintiff reported to them that he was sexually assaulted and drugged by Galfy. *Id.* at ¶¶ 6-14. According to the Complaint, neither Detective informed Plaintiff of his right to a rape care advocate or a forensic medical examination, and a sexual assault response team was not activated. *Id.* at ¶¶ 15-17. A sexual assault forensic evidence collection kit and a toxicology analysis were not performed on Plaintiff. *Id.* at ¶¶ 19-20. According to Plaintiff, these Defendants failed to follow the standards set by the Attorney General of the State of New Jersey and the Attorney General of the State of Pennsylvania for victims of sexual assault. *Id.* at ¶¶ 20-25. These Defendants also did not inform Plaintiff of his right to immediate medical attention or the benefit of evidence collection. *Id.* at ¶ 26. Plaintiff explains that evidence of sexual assault is material to a claim of self defense and would exonerate him for criminal liability in connection with the death of Galfy. *Id.* at ¶¶ 27-28.

Plaintiff next asserts that Defendant Pandina is not a registered nurse or physician and was contacted by the UCPO to prepare an expert report and to diagnose Plaintiff's physical and mental state in the report. According to Plaintiff, Defendant Pandina did not provide care meeting the standards set by the American College of Emergency Physicians for the Evaluation and Management of the Sexually Assaulted or Sexually Abused Patients. *Id.* at ¶¶ 29-33.

Plaintiff further alleges that a sexual assault forensic evidence collection kit and a toxicology analysis was performed on the deceased Galfy, on May 14, 2013, by a licensed physician, and this analysis showed that Plaintiff did not sexually assault Galfy. The analysis also showed evidence of Galfy's semen and traces of unidentified blood. *See id.* at ¶¶ 34-39. Plaintiff asserts that the examination performed on Galfy followed standard procedures for sexual assault victims, but this procedure was not followed for Plaintiff. *See id.* at ¶¶ 40-43.

Plaintiff next asserts that "[i]nvestigators" falsely asserted to the media that Plaintiff had a "a romp" with Galfy. *Id.* at ¶ 44. Assistant Prosecutor Peterson also told the Grand Jury that the rape kit performed on Galfy proved that Plaintiff had not been raped, that Plaintiff showed no signs of being drugged after the incident, contradicting the evidence, including witness reports. ¶¶ *Id.* at 46-51. Detective Ho testified to the Grand Jury that beer bottles found in Galfy's garage were swabbed for analysis when, in fact, Detective Suter fumigated and cleaned the bottles and all other collected glasses and did not perform any DNA or drug analysis. *Id.* at ¶¶ 52-53. Prosecutor Peterson also intentionally misled the grand jury by stating that " no semen was found," despite the fact that Galfy's own semen was found. Detective Ho also testified to the grand jury that no semen was found in the bedroom where Galfy was discovered and where Plaintiff claims the sexual assault occurred. *Id.* at ¶¶ 54-58.

Plaintiff asserts that Galfy's home was searched for evidence by Detective Henderson and Sheriff Gardner on May 15, 2013, and they photographed and collected evidence from the home but but failed to collect samples of stains on the carpet in the master bedroom, take the glasses out of the dishwasher, or collect all the pill bottles in the home so these items could be analyzed. *See id.* at ¶¶ 60-78.  Detective Ho also falsely testified before the Grand Jury that all the pill bottles in the home were collected. *See id.* at ¶ 79.

Plaintiff also asserts that Pandina is engaged in the unauthorized practice of medicine or psychiatry by providing expert testimony in criminal cases without a license to practice medicine or psychiatry  *See id.* at ¶¶ 80-98.  Plaintiff further asserts that Defendants "enabled" Pandina's unauthorized practice of medicine and/or psychiatry and denied Plaintiff due process and equal protection of the law. *Id.* at ¶¶ 99-103.

Plaintiff asserts that Defendants denied Plaintiff due process and equal protection of the law by failing to follow the Attorney General's standards for providing services to sexual assault victims.  *Id.* at ¶¶ 104-105.  Finally, Plaintiff asserts that the investigation of Galfy's death and Plaintiff's indictment and prosecution for Galfy's murder were conducted in bad faith in violation of Plaintiff's right to due process and equal protection, and that the loss, destruction, and suppression of evidence has denied Plaintiff the ability to obtain a fair trial. *See id.* at ¶¶ 106-113.

### b. Procedural History

Plaintiff's Complaint was docketed on December 23, 2015.  *See* ECF No. 1.  Along with claims for damages and other forms of equitable relief, Plaintiff's Complaint seeks to enjoin his pending state criminal prosecution.  *See id.* at 4.  The State Defendants moved to dismiss the claims for injunctive relief pursuant to *Younger v. Harris*, 401 U.S. 37, 45 (1971) and sought

dismissal of the remaining claims for damages. In the alternative, the State Defendants asked the Court to stay the matter pending the outcome of Plaintiff's criminal proceedings. *See* ECF Nos. 15.[2] Plaintiff opposed the motion. ECF No. 17. On November 16, 2016, this Court granted the State Defendants' motion to dismiss Plaintiff's claims for injunctive relief seeking to enjoin his criminal prosecution, pursuant to *Younger*. *See* ECF No. 42. The Court also granted Defendants' motion to stay Plaintiff's remaining damages claims pending the outcome of his state court criminal proceedings. *See id.*

On July 11, 2019, Plaintiff submitted a letter request to reopen this matter. *See* ECF No. 47. Attached to his letter request is a copy of the Judgment of Conviction showing that he was convicted of first-degree murder of Joseph Galfy, Jr. on April 24, 2019 following a jury trial. Plaintiff was sentenced on May 30, 2019 to fifty-seven years in prison subject to the No Early Release Act ("NERA"). *See* ECF No. 47, Judgment of Conviction dated May 30, 2019. On June 20, 2019, Plaintiff filed a Notice of Appeal with the New Jersey Appellate Division. ECF No. 59-3, Exhibit B. His appeal is currently pending.

The Court reopened this matter on July 22, 2019, and the instant motions to dismiss followed. ECF Nos. 59-62.

## II.    STANDARD OF REVIEW

The State Defendants move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and assert they are entitled to sovereign immunity under the Eleventh Amendment. This motion "may properly be considered a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)" because "the Eleventh

---

[2] The City and County Defendants also moved to dismiss the Complaint. ECF Nos. 10, 40.

Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996).

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017), *cert. denied* 138 S. Ct. 2623 (2018); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

As a pro se litigant, Plaintiff is entitled to liberal construction of his complaint. *See Liggon–Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*

### III.    ANALYSIS

The Court has already dismissed Plaintiff's claims for injunctive relief seeking to enjoin his prosecution and now liberally construes his remaining claims for relief, which arise under 42 U.S.C. § 1983. Section 1983 provides a civil remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must demonstrate that "some person has deprived him of a federal right ... [and] that the person who has deprived him of that right acted under color of state

or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir. (2014).

### a. Eleventh Amendment Immunity and Personhood Requirement

From the outset the Eleventh Amendment incorporates a general principle of sovereign immunity which bars citizens from bringing suits for damages against any state in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–101 (1984). In general, Eleventh Amendment immunity extends to state agencies and state officials in their official capacities, and, in doubtful cases, the Court analyzes several factors to determine whether an entity is an agency of the State, i.e., whether the State is the real party in interest. *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659-60 (3d Cir. 1989).

Relatedly, a state and its departments are not considered "persons" amenable to suit under section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67-70 (1989). Also barred are section 1983 suits for damages against "governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes," which are "no different from a suit against the State itself." *Id.* at 70-71. State officials, sued in their official capacities, are likewise not "persons" subject to a damages suit under section 1983. *Will*, 491 U.S. at 71 n.10; *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). On the other hand, a state official sued in his or her personal capacity is a "person" amenable to suit under section 1983, and does not enjoy Eleventh Amendment protection. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

The Third Circuit has held that when a county prosecutor's office is performing its core functions of investigating and prosecuting crime, it acts as an arm of the State.[3] *See, Beightler v.*

---

[3] "On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an

*Office of Essex Cty. Prosecutor*, 342 F. App'x. 829, 832 (3d Cir. 2009) (citing *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996); *see also Estate of Matthew Mckloskey v. Franklin Township*, 2016 WL 4680154, at *3 (D.N.J. Sept. 7, 2016)(collecting cases and finding that a county prosecutor's office is not a person under § 1983).  Because Plaintiff has sued the Union County Prosecutor's Office in connection with his prosecution for Galfy's death, the Court finds that it was acting as an arm of the state.  For these reasons, the Court will grant <u>with prejudice</u> the motion to dismiss as to the Union County Prosecutor's Office.  To the extent Plaintiff is suing State Defendants DellaQuila, Henderson, Ho, Hoffman, Park, Peterson, Vendas, Roeder or Walker in his or her official capacity for damages, these claims are likewise dismissed <u>with prejudice</u>.[4]

### b. Municipal Entities and *Monell* Liability

Plaintiff has also sued the Clark Police Department and the Union County Sheriff's Office.  In New Jersey, a municipal police department is not a separate legal entity from the governing municipality.  *See Groark v. Timek*, 989 F. Supp.2d 378, 382 (D.N.J. Nov. 27, 2013) (citing *Franks v. Cape May County*, 2010 WL 3614193, at *7 (D.N.J. Sept. 8, 2010)); *Drayton v. Monmouth County Correctional Institution Sheriff's Department*, 2020 WL 207711, at *1 (D.N.J. Jan. 14, 2020). The case law uniformly holds that the proper defendant is the municipality itself, not the police department. *See Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 (3d Cir. 2014) ("We further agree with the District Court that the police department was not a proper party to this action. Although local governmental units may

---

investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office." *Wright v. State*, 169 N.J. 422, 450 (2001) (quoting *Coleman*, 87 F.3d at 1499).

[4] They may remain potentially liable as persons in their individual capacities, however.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 856 (3d Cir. 2014).

constitute 'persons' against whom suit may be lodged under 42 U.S.C. § 1983, a city police department is a governmental sub-unit that is not distinct from the municipality of which it is a part.") (citation omitted). The Court will therefore grant the motion to dismiss <u>with prejudice</u> as to the Clark Police Department and the Union County Sheriff's Office, as these entities are not proper defendants in an action pursuant to § 1983.

The Court next considers whether Plaintiff states a *Monell* claim against the City of Clark and/or the County of Union. Municipalities and other local governments can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the deprivation resulted from an official policy or custom. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978). Although a municipality may be liable under 42 U.S.C. § 1983, it cannot be held liable on a theory of *respondeat superior*. *Id.* at 691. To the extent that Plaintiff asserts violations of his constitutional rights by the City of Clark or the County of Union, he fails to plead any facts showing that any alleged deprivation of his constitutional rights resulted from a policy or custom of either of these municipalities.[5] *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (finding "vague assertions" were insufficient to impose *Monell* liability); *Nash v. Kenney*, 784 F. App'x. 54, 57 (3d Cir. 2019). As such, the Court grants the motion to dismiss as to the City of Clark and to County of Union and dismisses these entities <u>without prejudice</u>.

---

[5] Municipalities like the City of Clark or Union County may be found liable under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the body's officers. Id. at 690. As to custom, municipalities may be sued for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.* at 690–91. Here, Plaintiff fails to provide any facts showing that the City of Clark or the County of Union adopted policies or widespread customs that caused the harm of which he complains.

    c. **The Personal Involvement Requirement**

It is axiomatic that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)(citing *Parratt v. Taylor*, 451 U.S. 527, 537 n. 3 (1981)); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Here, the Court will grant the motions to dismiss <u>without prejudice</u> as to Clark Police Chief Pedro Matos, Joseph Cryan, Edward Suter, Grace H. Park, Attorney General John H. Hoffman, William V. Roeder, and J Michael Walker, in their personal capacities, for lack of sufficient personal involvement in the alleged wrongs.

    d. **Remaining § 1983 Claims and Defendants**

The Court next addresses Plaintiff's substantive claims for relief against the remaining Moving Defendants sued in their personal capacities. The exact contours of Plaintiff's § 1983 claims are unclear but the Court construes the Complaint liberally.

The Court construes Plaintiff to allege that his substantive due process rights were violated by Defendants' negligent or reckless investigation into Galfy's death. According to Plaintiff, Prosecutor Peterson and Detectives DellaQuila, Henderson, Ho, and Vendas failed to investigate Plaintiff's allegations and collect the very evidence that would have established that Plaintiff acted in self-defense. Detective Henderson and Sheriff Gardner likewise failed to collect evidence from Galfy's home that would have supported Plaintiff's defense that he was drugged and sexually assaulted by Galfy.

A claim for negligent investigation is not cognizable in a civil rights action. As explained by the Third Circuit, "negligence by public officials is not actionable as a due process

deprivation of a civil right." *See Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir.1995)). As a general matter, negligence does not trigger a constitutional violation. *See Daniels v. Williams*, 474 U.S. 327, 334 (1986); *Baker v. McCollan*, 443 U.S. 137, 144 (1979). Assuming the conduct alleged amounts to recklessness, the Third Circuit, in *Johnson v. Logan*, 721 F. App'x. 205, 208 (3d Cir. 2018), expressed "significant doubts about whether there is an independent substantive due process right to be free from a reckless investigation." Likewise, in *Geness v. Cox*, 902 F.3d 344, 354 n.5 (3d Cir. 2018), the circuit court expressed "doubts . . . as to the viability of such a claim[.]"[6] *Id.* (finding claim time barred and having no occasion to rule on the issue); *see also Newton v. City of New York*, 566 F.Supp.2d 256, 278 (S.D.N.Y. 2008) ("[T]here is no constitutional right to an adequate investigation.")

Even if Plaintiff could proceed on a reckless investigation claim under the Fourth Amendment, *see Geness*, 902 F.3d at 354 n.5, if Plaintiff were to succeed on his claim that the evidence Defendants recklessly failed to obtain would exonerate him and establish that he acted in self-defense, that determination would necessarily impugn the validity of his conviction for Galfy's murder. For this reason, Plaintiff's claim of reckless investigation, to the extent such a claim is cognizable, is barred by the favorable-termination rule of *Heck v. Humphrey*, 512 U.S.

---

[6] The Third Circuit further stated that such a claim, if cognizable, could only arise under the Fourth Amendment. *Id.* at n5 (citing *Manuel v. City of Joliet, Ill*, ⎯⎯ U.S. ⎯⎯, 137 S.Ct. 911, 919, 197 L.Ed.2d 312 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."); *see also Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) ("A plaintiff cannot state a due process claim 'by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.'" (quoting *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003)).

477 (1994). In *Heck*, the Supreme Court held that "a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). Because Plaintiff has not shown that his conviction has been set aside, he cannot bring a claim for reckless investigation at this time. *See Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016). This claim is therefore dismissed <u>without prejudice</u> until such time that Plaintiff sets aside his conviction.

The State Defendants also construe Plaintiff's Complaint to assert the more familiar Fourth Amendment claims for malicious prosecution. "To prove malicious prosecution under § 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[7] Because Plaintiff is unable to establish favorable termination, he fails to state a claim for malicious prosecution, and the Court will grant the motion to dismiss with respect to this claim and dismiss this claim <u>without prejudice</u> until such time that Plaintiff sets aside his conviction.

---

[7] Fabricated evidence claims also require favorable termination. *See Baskerville v. City of Harrisburg*, No. 19-420, 2020 WL 108421, at *4 (M.D. Pa. Jan. 9, 2020) ("The Supreme Court has expressly likened [a fabrication of evidence] claim to malicious prosecution, thus requiring—as an element—favorable termination of the related criminal proceedings") (citing *McDonough v. Smith*, 588 U.S. ——, 139 S. Ct. 2149, 2155-59 (2019)); *Floyd v. Attorney Gen. of Pennsylvania*, 722 F. App'x 112, 114 (3d Cir. 2018) ("Because Floyd's malicious prosecution and fabrication of evidence claims do not accrue until the criminal proceedings have terminated in Floyd's favor, and Floyd has not demonstrated as much, they are barred by *Heck*.").

Plaintiff also complains that Assistant Prosecutor Peterson presented false and misleading evidence to the grand jury.  When sued in their personal capacities for damages, Prosecutors are shielded by absolute immunity for actions which are intimately associated with the judicial phase of the criminal process.  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  Such activities include activities undertaken while in court as well as selected out-of-court behavior intimately associated with the judicial phases of litigation.  *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992).  Prosecutorial activities protected by absolute, as opposed to qualified, immunity include soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings.  *See id.* at 465 (citing *Burns v. Reed*, 500 U.S. 478 (1991)).  Even interviews generating evidence to be presented to a grand jury are absolutely protected. *Id.* (citing *Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989)) (prosecutor's solicitation of testimony for use in grand jury proceedings is "encompassed within 'the preparation necessary to present a case' and therefore [is] immunized as involving the prosecutors' advocacy functions.") (citation omitted).  Because the prosecutor here engaged in a protected prosecutorial function when he presented the allegedly false information to the grand jury, he is immune from suit for this claim.  For this reason, all § 1983 damages claims against the Assistant Prosecutor Peterson arising from presentation of false evidence to the grand jury are dismissed <u>with prejudice</u> on the basis of prosecutorial immunity.

Plaintiff also contends that UCPO Detective Ho presented false or misleading evidence to the grand jury.  The Supreme Court has unanimously held that grand jury witnesses, like trial witnesses, have "absolute immunity from any § 1983 claim based on the witness' testimony." *Rehberg v. Paulk*, 132 S.Ct. 1497, 1506 (2012); *Cope v. Kohler*, 2015 WL 3952714, at *5 (D.N.J. Jun. 29, 2015).  The Court will therefore dismiss <u>with prejudice</u> the claim against Defendant Ho arising from his alleged false testimony to the grand jury.

Plaintiff also asserts that Assistant Prosecutor Peterson and Detectives DellaQuila, Henderson, Ho, and Vendas, who reported to the Philadelphia Police Department following Plaintiff's arrest, failed to inform Plaintiff of his right to a rape care advocate and a forensic medical examination and failed to activate a sexual assault response team. Plaintiff further complains that a sexual assault forensic evidence collection kit and a toxicology analysis were not performed on Plaintiff but were performed on the deceased Galfy. According to Plaintiff, these Defendants failed to follow the standards for victims of sexual assault set by the Attorney General of the State of New Jersey.

Because Plaintiff appears to assert that he was entitled to certain protections and benefits provided to sexual assault victims, the Court considers whether he states a procedural due process claim. In evaluating a procedural due process claim, courts first determine "whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (quotations omitted). Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* Here, Plaintiff has not pleaded facts showing that he has a legitimate claim of entitlement to a rape care advocate, a sexual assault forensic evidence collection kit, a toxicology analysis, or report created by licensed physician or psychologist rather than by Defendant

Pandina. As such, he fails to a state claim for violations of his constitutional right to procedural due process.

Plaintiff also complains that investigators falsely asserted to the media that Plaintiff had a "a romp" with Galfy. An individual does not have a protected interest in reputation alone. *Thomas v. Indep. Twp.*, 463 F.3d 285, 297 (3d Cir. 2006) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Instead, "defamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (citing Paul, 424 U.S. at 701-12, 96 S.Ct. 1155). Accordingly, a plaintiff must plead a "stigma-plus" claim in his complaint. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (explaining that "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest"). Here, Plaintiff's claim is foreclosed by the Supreme Court's decision in *Paul v. Davis*. There, the Court stated that a claim of defamation (by a police department that circulated a flyer imputing criminal behavior to a person) was not a federal claim even if it would "seriously impair [that person's] future employment opportunities." *Paul*, 424 U.S. at 697. As such, Plaintiff fails to state a claim for relief as to this claim.

Nor has Plaintiff pleaded facts showing an equal protection violation based on the fact that he was treated differently than Galfy. Generally, "[a] violation of the Equal Protection Clause may exist when government action discriminates against a "suspect class," or it interferes with a "fundamental right." *See Brown v. Borough of Mahaffey*, 35 F.3d 846, 850 (3d Cir. 1994). However, where a plaintiff cannot prove that he is a member of a protected class or that the government has interfered with a fundamental right, he may bring his claim under a "class-

of-one" theory. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 595 (2008). A claim under this theory is subjected to a rational basis test and the plaintiff must prove that he was "intentionally treated differently from others similarly situated." *Id.* at 601 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see also Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992). Here, Plaintiff fails to show that he is similarly situated to Galfy, who was the apparent victim of a homicide, and also fails to plead facts showing that the difference in treatment was intentional discrimination. As such, this claim fails to state a claim for relief.

Finally, the Court will grant the motion to dismiss and dismiss <u>without prejudice</u> all § 1983 claims as to Defendant Pandina.[8] Plaintiff asserts that this Defendant is engaged in the unauthorized practice of medicine or psychiatry, failed to follow standards for treating sexual assault victims, and prepared a report about Plaintiff for the UCPO, none of which violate the Constitution. To the extent Plaintiff seeks to assert state law claims for relief against this Defendant or any of the Defendants, the Court, having dismissed the federal claims, declines supplemental jurisdiction over any state law claims for relief. *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." (internal quotation marks omitted)).

### e. Leave to Amend

In the Third Circuit, the Court must allow leave to amend in civil rights cases regardless of whether it is requested before dismissing a case for failure to state a claim, unless leave to amend would be inequitable or futile. *Fletcher–Harlee Corp. v. Pote Concrete Contractors,*

---

[8] The Court assumes without deciding that this Defendant acted under color of state law.

*Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Prior to closing this action, the Court will provide Plaintiff with 30 days to submit an Amended Complaint if he can cure the deficiencies in those federal claims the Court has dismissed without prejudice.[9]

### IV.   CONCLUSION

For the reasons explained in this Opinion, the motions to dismiss are granted as to all claims and Moving Defendants. Plaintiff is granted leave to amend within 30 days to the extent he can cure the deficiencies in the claims that have been dismissed without prejudice. An appropriate Order follows.

Dated:  April 30, 2020                                        */s Madeline Cox Arleo*_____
                                                                           **Hon. Madeline Cox Arleo**
                                                                           **UNITED STATES DISTRICT JUDGE**

---

[9] With respect to those claims that are barred by *Heck* or by the favorable termination rule, Plaintiff may not bring those claims until he sets aside his conviction.